UNITED STATES of America, Plaintiff-Appellee,

v.

George Michael McCLURE, Defendant-Appellant.

No. 76–2445.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1977.

Ed Leinster, Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., A. Thomas Mihok, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

George Michael McClure sold an ounce of heroin on each of two occasions to Agent Rhuben McGee of the Drug Enforcement Administration (DEA). He was convicted by a jury in the Middle District of Florida for two violations of 21 U.S.C. § 841(a)(1).[1] He argues on appeal that (1) testimony by other persons that DEA informant Brian Carroll had intimidated them into selling heroin should have been admitted, and (2) the use of a contingent fee informant is sufficiently repugnant to violate due process. We reverse on the first point of error.

This drama focuses not only upon appellant but also upon a supporting actor. Brian Carroll had a speckled reputation when he approached Agent McGee and offered to become a confidential drug informant. McGee knew Carroll's reputation for violence, which was based in part on Carroll's involvement in a scuffle with a reputed heroin dealer. Even though his antagonist shot him in the leg, Carroll, not the dealer, was charged with aggravated assault. Carroll had also been a bouncer in nearby Indiatlantic. He testified that he had decided

---

1. 21 U.S.C. § 841(a)(1) provides:

    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance

to mend his ways and retaliate against heroin dealers lawfully by helping to bring them to justice. McGee hired him after a two hour conversation. The agent promised Carroll $50 for every new seller of a gram of heroin and $100 for every new seller of an ounce. The DEA was Carroll's sole source of income during this period.

McGee told Carroll that someone named "Mike" was rumored to deal heroin in the Satellite Beach area. Within a few weeks Carroll identified "Mike" as the appellant. Through appellant's friend, David Boyd, Carroll arranged a sale date without meeting appellant beforehand. The first sale took place on November 11, 1975 at appellant's residence and the second sale took place six days later at Boyd's residence. On each occasion appellant sold the heroin to Agent McGee in a back bedroom while Carroll, Boyd and one other person looked on.

At trial appellant conceded his prior involvement with drugs. He kept heroin at home and cocaine in the backyard. He shared heroin with his friends and they often returned the favor. He testified that he never profited from drug transactions.

His defense centered around the claim that he sold heroin to Agent McGee because he was afraid of Carroll and was threatened with dire consequences if he refused. Appellant testified that Boyd told him about Carroll and said appellant "had better" make the sale. Appellant added that his other friends told him "some unbelievable tales about Mr. Carroll throwing people through windows and that he was a contract man . . . ." The following exchange took place on direct examination regarding the November 11th sale:

Q. When he first came over there did you tell him that you did want to or did not want to?

A. I told him I didn't want to and never did. That wasn't my line and I didn't distribute to unknown people for any quantities like that.

Q. Did he say anything in response to that?

A. Well, he told me that he didn't want to mess around and that I had better get it over with here and now and I was terrified of this person.

According to appellant, at the first sale Carroll demanded that he sell another ounce at a later date, and the threat was repeated on the 12th at the Red Lion Club when they accidentally ran into each other. Appellant claimed that he made the second sale only because he was afraid not to.

Brian Carroll sharply contradicted appellant's testimony. He viewed his role as a minor character rather than as a belligerent and ominous leading actor. He denied threatening the appellant, denied ever threatening people or intimidating them into selling heroin, and stated that he never carried a gun to facilitate progress in his work.

■ Appellant sought to introduce testimony from three individuals to the effect that Carroll had coerced them into selling heroin and had carried a gun in the time frame just after the sales by appellant. Kenneth Barrett testified on the proffer that Carroll had shown him a gun stuck in his belt and had said that Barrett would be "very dead" if he failed to produce narcotics within twenty-four hours. This conversation took place in early December. The trial judge excluded the proffered testimony over appellant's objection that it was relevant to prove appellant's lack of intent and to impeach Carroll. The basis for the exclusion was that the events referred to in the proffer occurred subsequent to the sales made by appellant.

■ This was reversible error. We hold that under Fed.R.Evid. 404(b)[2] evidence of a systematic campaign of threats

---

**2.** Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

and intimidation against other persons is admissible to show lack of criminal intent by a defendant who claims to have been illegally coerced. Rule 404(b) is normally used by the government to show evidence of prior similar offenses committed by the defendant. In such cases, strict standards for admissibility protect the defendant from prejudice. *See, e. g., United States v. Urdiales,* 523 F.2d 1245 (5th Cir. 1975), cert. denied, 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373 (1976). But in the case before us it was the defendant who sought to introduce evidence of the informant's scheme. His right to present a vigorous defense required the admission of the proffered testimony. The fact that it referred exclusively to threats made by Carroll after the sales by appellant affects its weight but not its admissibility.[3]

We intimate no opinion as to the credibility of appellant's entrapment defense. We decide only that a jury could not properly convict him absent the opportunity to hear the proffered testimony bearing upon his theory of defense and weigh its credibility along with the other evidence in the case.

In view of our remand of this case, we think it proper to discuss appellant's second assignment of error. He claims that the use of a contingent fee informant was impermissible under *Williamson v. United States,* 311 F.2d 441 (5th Cir. 1962). In that case treasury agents targeted "Big Boy" and two others as potential defendants and promised the informant a specified sum for obtaining evidence against them for whiskey violations. The conviction was reversed in an opinion by Judge Rives because the government did not demonstrate that the agents had explained the law of entrapment to the informant, nor that the agents already knew the defendants were involved in whiskey-related crimes.

"Without some such justification or explanation, we cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed. Such an arrangement might tend to a 'frame up,' or to cause an informer to induce or persuade innocent persons to commit crimes which they had no previous intent or purpose to commit. The opportunities for abuse are too obvious to require elaboration."

311 F.2d at 444. Chief Judge Brown noted in a special concurrence that *Williamson* is not an entrapment case. It focuses upon the method used to "make" the case rather than the subjective predisposition of the defendant to commit the crime. 311 F.2d at 445. Judge Cameron dissented. The Supreme Court has left open the possibility that there may be some cases "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . . ." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). At least five of the current members of the Supreme Court adhere to that view. *Hampton v. United States,* 425 U.S. 484, 491–500, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).[4] This is the niche occupied by *Williamson.*

■ We note that cases in this circuit have confined *Williamson* to a narrow set of circumstances. Factors that militate against application of *Williamson* may be present in the case at bar. They include the possibility that Carroll was instructed in the law of entrapment, *see United States v. Garcia,* 528 F.2d 580 (5th Cir.), cert. denied, —— U.S. ——, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976), that the agent, not the informant, made the buy, *see United States v. Jenkins,*

---

**3.** The trial judge might have chosen to exclude the evidence on grounds other than relevance under Fed.R.Evid. 403. We express no opinion as to whether this would have been a sound exercise of discretion.

**4.** Justice Powell's concurrence, joined by Justice Blackmun, expresses the belief that funda-

mental fairness can prevent the conviction of a predisposed defendant if police behavior is sufficiently outrageous. Justice Brennan's dissent, joined by Justices Stewart and Marshall, is even more expansive in accordance with the dissenters' view in *United States v. Russell, supra.*

480 F.2d 1198 (5th Cir.), cert. denied, 414 U.S. 913, 94 S.Ct. 256, 38 L.Ed.2d 151 (1973), and that Agent McGee did not know who "Mike" the dealer was and did not target appellant as his prey. *See United States v. Joseph*, 533 F.2d 282 (5th Cir. 1976). *See also United States v. Oquendo*, 505 F.2d 1307 (5th Cir. 1975).

For the reasons expressed above, the case must be REVERSED and REMANDED for a new trial.