**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy Joe NICHOLS,
Defendant-Appellant.**

**No. 83–3750.**

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1985.

---

Orr & Davis, Stephen M. Orr, Austin, Tex., for defendant-appellant.

John Volz, U.S. Atty., Harry W. McSherry, Jr., Robert J. Boitmann, D.R. Smith, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before GEE, REAVLEY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant appeals his conviction on a two-count indictment for conspiracy to import cocaine and conspiracy to possess with intent to distribute cocaine. We affirm.

## I.

Nichols was charged in four separate indictments for his role in smuggling cocaine into the United States by aircraft.

An overview of the facts presented in the multiple indictments can be gleaned from our recent decision[1] in an appeal by Nichols from an adverse ruling of the district court on a double jeopardy motion he filed in response to charges contained in a related indictment:

The mise-en scene begins in 1980 when Claude Griffin began smuggling and selling marihuana. By 1982, Griffin and Fernando Lopez, a Colombian with shipping ties in New Orleans, conspired to smuggle cocaine from Colombia by air into Louisiana. Lopez, who had contacts in Colombia and claimed a ready source of supply, assumed primary control of the operation. Griffin was second in command. Each contacted and engaged other persons to perform various functions. According to Griffin, who turned state's evidence, he and Lopez intended to continue the operation for an indefinite period, smuggling as much as they could.

Griffin and Lopez hired James Edward Eakes and Robert L. Ross to handle the actual transportation. Eakes and Ross employed Nichols to pilot their aircraft. Each flight was to originate in the United States, fly to Colombia for loading, refuel in Belize, and return to a remote strip near Raceland, Louisiana, a small town in the South Louisiana bayou country.

The first trip was planned in June of 1982 and brought to fruition in July 1982. Lopez and Griffin were at the center of planning for this trip, as they were for all trips. Eakes and Ross, hired to do the actual transporting, hired Nichols to fly their aircraft, a Piper Aztec. Lopez made arrangements with an unidentified source in Colombia. Nichols flew the Piper Aztec and smuggled 100 kilograms of cocaine from Colombia to Raceland. This trip is the basis for indictment number CR–83–305 returned June 24, 1983.

As the July trip was being finalized, Lopez and Griffin planned the second trip. Lopez made arrangements with a new supplier, the Rodriguez brothers. Eakes and Ross were hired and they again put Nichols in the cockpit. In August of 1982, Nichols ferried 2560 kilograms of cocaine from Colombia to Raceland in the Piper Aztec. After this flight, Nichols met with Griffin, Eakes, Ross and Thomas Paul Gray. During the course of their discussions over what appeared to be too much drinks, a dispute over money arose and Griffin, Eakes, and Ross had a "falling out." The August 1982 trip is the foundation for indictment number CR–83–306 returned June 24, 1984.

Following the Griffin/Eakes/Ross difficulty in September 1982, Griffin reached an agreement with Nichols and E. Lee Morris to fly the next load, which was then being planned for October 1982. The suppliers for that transaction were again the Rodriguez family; the origination, refueling and destination points were the same; and Nichols was to be the pilot. A different aircraft was used. That aircraft, a Bonanza, devel-

---

1. *United States v. Nichols,* 741 F.2d 767 (5th Cir.1984).

oped mechanical trouble, and Nichols was grounded in Belize. Their hand forced, Griffin and Lopez made arrangements with Eakes and Ross to transport the cocaine from Colombia to Louisiana. They did so in their Piper Aztec, picking up 250 kilograms of cocaine. Insofar as this record reflects, Eakes, Ross, and their plane vanished. The October 1982 flight, the third trip, is referred to in the evidence as the "rip load." It serves as the predicate for indictment number CR–83–168, returned July 8, 1983. Although indicted for his participation in this trip, Nichols has not yet been brought to trial on these charges, and they are not a part of this appeal.

As the October 1982 trip began, the planning for the fourth trip was already underway. A new conspirator, Dr. Issac H. Saltz (referred to in the stipulation and in briefs as Harry) came on stage. The record is unclear as to the full extent of Saltz's role, but it does appear that he was to help Lopez and Griffin with the financing for the acquisition of a Piper Navaho aircraft for use in the continuing smuggling operations. The Eakes-Ross aircraft was not available, nor was the Bonanza. An aircraft was essential. Otherwise, the post-October 1982 trips were to involve the securing of cocaine from the Rodriguez brothers in Colombia, refueling in Belize, and the landing and offloading at the Raceland strip. Nichols was to be the pilot. The fourth and any additional loads were aborted. No more flights were made. Fearing discovery, indeed the operation was under surveillance, Griffin fled to Honduras and began negotiations which led to a plea bargain with the government. In return for this cooperation, Griffin was not indicted for the first two loads. The planning for the fourth and subsequent trips resulted in indictment CR–83–166, returned March 25, 1983.

As reflected by the above factual presentation, the indictment in this case (No. CR–83–166) relates to the agreement and preliminary steps taken in furtherance of the agreement to fly a fourth load of cocaine from Colombia to the United States. The government's case was based primarily on the testimony of Claude Griffin, one of the organizers of the conspiracy and Thomas Paul Gray, another co-conspirator. David Christner, a cooperative government witness, who was asked to serve as a backup pilot to Nichols, also testified.

Griffin testified that after the theft of the third load of cocaine, he and Lopez travelled to Colombia and convinced the Rodriguez brothers to continue supplying cocaine to their organization. Before the loss of the third load of cocaine, the Rodriguez brothers had authorized the purchase of a twin-engine aircraft—a Piper Navaho—for use in transporting cocaine from Colombia to the United States. The aircraft, which was specifically outfitted for long flights, was purchased through the new member of the conspiracy, Dr. Saltz. Griffin and Lopez agreed that Billy Nichols would be the permanent pilot for the organization and further agreed to pay Nichols $300,000 per trip. They hoped that Nichols would be able to make two cocaine runs per month from Colombia to the United States.

Nichols, at the request of Griffin and Lopez, took at least two trips in the Navaho preparatory to resuming the cocaine runs. Nichols and Lopez flew the Navaho to Texas to survey several prospective landing sites. Nichols also flew the Navaho to Panama for inspection by a Rodriguez representative. In addition to the testimony of the witnesses named above, the government introduced independent evidence which placed Lopez, Nichols and Morris together in Panama with certain Colombians. Nichols admitted that his Beechcraft was wrecked in Belise, and his passport showed that he had travelled to Cali, Colombia.

The defense attacked the credibility of Griffin, who was an admitted drug smuggler. Nichols also took the stand and cast himself as a Unitarian minister with a love of flying. He denied any involvement with drug trafficking, denied any knowledge of

the cocaine business, and asserted that he would not involve himself with the cocaine business. Nichols was convicted on both counts of the indictment. In this appeal, he asserts the fatal impropriety of a number of incidents during the trial.

## II.

### A.

■ Nichols objects to several statements made by government counsel during closing argument. No contemporaneous objection was made to these statements; thus appellant is entitled to relief only if the statements were so prejudicial as to constitute plain error. As we held in *United States v. Cook*, 592 F.2d 877 at 879 (5th Cir.1979):

> In order for an error to be within the classification of "plain" it must be not only obvious and substantial but also so basic and so prejudicial that the resulting trial lacks the fundamental elements of justice. The "plain error" concept confers upon a reviewing court a "residuum of power which, withheld from the trial participants' usual control over preservation of error, protects not only their immediate interest but also the criminal justice process itself." *United States v. Johnson*, 585 F.2d 119, 127 (5th Cir. 1978)."

The only statement complained of that approaches error of this gravity was made by the prosecutor in rebuttal:

> If you know Miami is the dope smuggling capital of the United States and it probably is, and you know that you are on trial for dope smuggling, I think you will say, I don't know if I went to Miami, I might have stayed in Orlando with my family, but if you are confronted with a ticket or a passport then you will say maybe I did go. You might be right. Cali, Colombia, is the focal point of the distribution of cocaine in the world. And Mr. Nichols had a serious problem in acknowledging the fact that he was indeed in Cali.

■ This argument was improper in that no evidence was adduced to support the statement that "Cali, Colombia, is the focal point of the distribution of cocaine in the world." However, the evidence did show that Cali, Colombia, was the source of drugs for the Griffin/Lopez organization. Additionally, the district court reminded the jury on at least three occasions that the argument of counsel was not evidence in the case. Under these circumstances, we conclude that the statement was not so prejudicial that "the resulting trial lacked the fundamental elements of justice."

The other statements complained of are responses to comments by defense counsel attacking the credibility of the government witnesses, and suggestions by government counsel of reasons why Nichols' testimony should not be accepted. If these arguments were improper at all, they do not approach the level of prejudice necessary to satisfy the plain error standard.

### B.

■ Nichols next complains that the trial court permitted introduction of evidence of Nichols' involvement in transporting the first three loads of cocaine from Colombia into the United States. This argument is based on Fed.Rule of Evid. 404(b), which forbids the introduction of acts extrinsic to a defendant's indictment to show the defendant's bad character. Nichols contends that evidence of his involvement in transporting cocaine before the events which are the subject of this indictment occurred was impermissibly admitted for the purpose of showing his bad character.

Nichols' arguments are meritless for two reasons: First, evidence of how the Griffin/Lopez organization was established and how the participants conceived and carried out their plan for transporting cocaine from Colombia to the United States should not be considered acts extrinsic to the conspiracies charged in this indictment. "An act cannot be characterized as an extrinsic act when the evidence concerning that act and the evidence used to prove the crime

charged are inextricably intertwined." *United States v. Aleman,* 592 F.2d 881 (5th Cir.1979). Evidence of the establishment of the conspiracy, identity of the participants, and execution of the scheme was a legitimate part of the government's proof in establishing the conspiracies charged in this case. We held in *United States v. Nichols,* 741 F.2d 767 (5th Cir.1984) that, although Nichols and his co-conspirators agreed to commit multiple violations of the drug law, Nichols participated in only a single conspiracy to import illegal drugs and a single conspiracy to possess with intent to distribute illegal drugs. We concluded that the government was therefore barred from prosecuting each drug run as a separate conspiracy. This holding eliminates any impermissible prejudice resulting from the introduction of evidence of Nichols' involvement in transporting the first three loads of cocaine into the United States, since those acts were part of the single conspiracy to import and the single conspiracy to possess with intent to distribute.

Additionally, even if the evidence of the earlier shipments of cocaine should be treated as "other acts," its submission is permissible under the test for admission of evidence of extrinsic offenses set out in *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc).[2] Nichols' defense was grounded on his complete denial that he had ever engaged or planned to engage in transporting illegal drugs. Nichols testified that the purpose of his flights out of the United States was to demonstrate aircraft to prospective purchasers. The evidence of defendant's involvement in the earlier cocaine runs was clearly admissible to show that Nichols had very recently engaged in transporting cocaine. The district court did not abuse its discretion in

concluding that any prejudice was outweighed by the probative value of the evidence on this issue. *See United States v. Dunbar,* 614 F.2d 39, 42 (5th Cir.1980); *United States v. Aleman,* 592 F.2d 881, 885 (5th Cir.1979).

### C.

■ The appellant next complains that the district court erred in failing to dismiss the indictment because of its vagueness. We conclude that the trial court did not abuse its discretion in denying defendant's motion to dismiss the indictment. The indictment contains the elements of the offenses charged, closely tracks the language of the statutes and gave adequate notice of the offense charged. See *United States v. Diecidue,* 603 F.2d 535, 547 (5th Cir.1979); *United States v. Campbell,* 685 F.2d 131, 132 (5th Cir.1982).

### D.

■ Appellant next complains of the admission of the testimony of government witness, Rene Martin, in rebuttal. Following defendant's testimony that he had never engaged in illicit drug trafficking and had never smuggled illicit drugs into this country, the government was permitted to call Martin in rebuttal. Martin testified that Nichols had flown marijuana into the United States in 1981.

In view of the defendant's denial of intent or knowledge of the illicit drug trade and the limiting instruction given by the district court concerning the use the jury could make of the extrinsic evidence, it did not abuse its discretion in admitting this testimony. See *United States v. Ricardo,* 619 F.2d 1124, 1131 (5th Cir.1980); *United States v. Dunbar,* 614 F.2d 39, 40–41 (5th Cir.1980).

---

**2.** First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403.... The standards are established by rule 401, which deems evidence relevant when it has 'any tendency to

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the offense charged.
582 F.2d at 898.

**1266**

**E.**

■ Appellant next complains that the trial court gave an "Allen" charge on August 5, 1983, after the jury had deliberated approximately six hours that day and approximately two hours the previous day. Appellant does not complain of the contents of the charge. Indeed, the language is virtually identical to the language approved in *United States v. Jennings*, 724 F.2d 436 (5th Cir.1984), and *United States v. Anderton*, 679 F.2d 1199 (5th Cir.1982). Appellant complains that the Allen charge was given at 4:00 p.m. on Friday afternoon, and thus was "coercive." The trial judge is vested with broad discretion to evaluate whether an Allen charge is likely to coerce a jury into returning a verdict it would not otherwise return. We conclude that the trial judge did not abuse his discretion.

**F.**

Finally, appellant complains that government counsel was guilty of misconduct in cross-examining the defendant. We have carefully reviewed the cross-examination complained of and find no merit to appellant's argument.

AFFIRMED.