UNITED STATES of America,
Plaintiff–Appellee,

v.

R. Gordon REEVES, Doylin C. Kile,
and Charles J. Kerlegon,
Defendants–Appellants.

No. 89–4111.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1990.

J. Michael Small, Alexandria, La., Celia R. Cangelosi, Baton Rouge, La., for Kile.

Eddie L. Stephens, Baker, La., for Kerlegon and Reeves.

William J. Flanagan, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for U.S.

Before THORNBERRY, GARWOOD and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

This is an appeal by three defendants of convictions for extortion and conspiracy to commit extortion. We affirm.

R. Gordon Reeves, Charles J. Kerlegon, and Doylin C. Kile were members of the Board of Commissioners of the Lake Charles Harbor and Terminal District (the Dock Board). In August 1986 Bill Henry formed Port Stevedoring, Inc., a stevedoring company operating at the Port of Lake Charles. A disagreement over compensation arose between Henry and Harlen Duhon, who had helped Henry to organize Port Stevedoring. In December the Dock Board was considering whether to permit Atlantic and Gulf Stevedoring, a competitor to Port Stevedoring, to operate at the port. Kerlegon indicated to Henry that some of the commissioners would vote in favor of the permit on account of Henry's treatment of Duhon in the compensation dispute. Kerlegon suggested that Henry pay $20,-000 to Duhon. Henry paid the money through his attorney and the Dock Board subsequently voted to deny the permit to Atlantic and Gulf Stevedoring.

Henry later attempted to persuade the Dock Board to permit Port Stevedoring to handle a certain lucrative operation at the port. Henry met with Kerlegon, Kile, and Reeves and was asked to give a percentage of stock in Port Stevedoring in exchange for favorable votes on the Dock Board. Henry contacted the Federal Bureau of Investigation and agreed to record his communications with the three commissioners.

Over the next few months Henry had several contacts with the three commissioners. During one of these sessions Henry suggested a payment of $2,000 and additional payments of $1,000 per month instead of a percentage of stock. In October the Dock Board voted in favor of dividing a contract for the lucrative operation between Port Stevedoring and Lake Charles Stevedoring. Kerlegon, Kile, and Reeves voted in favor of dividing the contract and Henry subsequently paid $2,000 to each of them. In December and January Henry made additional $1,000 payments.

Kerlegon, Kile, and Reeves were charged with several counts of extortion and conspiracy to commit extortion under 18 U.S.C. § 1951. They pleaded not guilty and raised the defense of entrapment. The jury returned a guilty verdict as to each defendant and on each charge.

### Evidence

The appellants first argue that the district judge erred in excluding certain testimony appellants offered to establish that Henry engaged in a pattern of soliciting favorable action from public officials on

Dock Board matters in exchange for financial reward. The proposed evidence related to two public officers. First, a transcript offered by the appellants indicated that Henry spoke with Wilford Carter, a Louisiana state representative, in an attempt to persuade Carter to intercede with the appellants on Henry's behalf in exchange for money. The appellants also sought to cross-examine Henry on his communications with Carter. Second, the appellants wished to cross-examine Henry on alleged attempts by Henry to bribe Frank Price, another Dock Board member, and sought to present the testimony of Price himself. The appellants argue that under Fed.R. Evid. 401 Henry's communications with Carter and Price were relevant to their defense of entrapment because his efforts to induce Carter and Price to engage in criminal activity tended to make it "more probable" that Henry induced the criminal activity of the appellants. The appellants also argue that the testimony would be relevant under Fed.R.Evid. 404(b) as proof of a "plan" to bribe public officials with influence over the Dock Board. The government argues that the defense of entrapment is concerned with the intent or predisposition of the defendant and that the proposed testimony was irrelevant to the predisposition of the defendants to commit the crimes charged.

■ The district judge's rulings are reviewable for abuse of discretion, *United States v. Reed*, 715 F.2d 870, 875 (5th Cir. 1983), and he properly exercised his discretion in refusing to admit evidence of Henry's unrelated communications. "[T]he entrapment defense 'focus[es] on the intent or predisposition of the defendant to commit the crime,' ... rather than upon the conduct of the Government's agents." *Hampton v. United States*, 425 U.S. 484, 488, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976) (quoting *United States v. Russell*, 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973)). Henry's conduct in unrelated matters is not pertinent to the predisposition of the appellants to commit the crimes charged. *Cross v. Georgia*, 581 F.2d 102, 104 (5th Cir.1978). The appellants nevertheless argue that this Court has reversed a conviction arising under similar circumstances. *See United States v. McClure*, 546 F.2d 670 (5th Cir.1977), *after remand*, 577 F.2d 1021 (1978). In *McClure* a government informant had a history of violence against other persons which was known by defendant who testified he committed the crime only because the informant threatened his life and he believed the threat. This Court held that "under Fed.R.Evid. 404(b) evidence of a systematic campaign of threats and intimidation against other persons is admissible to show lack of criminal intent by a defendant who claims to have been illegally coerced." 546 F.2d at 672–73 (footnote omitted). The evidence proffered in this case consisted of one alleged event occurring five years earlier when Henry was not acting as a government agent and one which arose out of this same investigation. There was no "systematic campaign." There were no "threats or intimidation." One incident was very remote in time. The proffered evidence does not show a scheme or campaign. *See United States v. Bocra*, 623 F.2d 281 (3rd Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980). The rule announced in *McClure* reaches only to a "systematic campaign of threats and intimidation" and the appellants make no claim that Henry engaged in such a campaign.

■ Appellant Kile argues in addition that in violation of his Right to Confrontation the district judge limited his cross examination of Henry regarding Henry's financial motives for cooperating with the government. The record, however, shows that Kile was permitted extensively to cross examine Henry on the subject, and that the judge only occasionally limited the examination when the questions became cumulative. *See United States v. Elorduy*, 612 F.2d 986, 989 (5th Cir.) (The Right to Confrontation was not violated where the essence of the desired testimony was sufficiently before the jury), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2997, 64 L.Ed.2d 861 (1980).

### Instructions

■ The appellants argue that the district judge improperly submitted written instructions to the jury and that the error was compounded by an erroneous instruction contained in the charge. The judge charged the jury: "It is not a defense to extortion that, had there been no extortion, the defendants might, under available information, lawfully and properly have acted just as they did." The appellants state that they committed themselves to vote in favor of Henry's interests before any discussion of money occurred, and accordingly this instruction deprived them of the opportunity to present their theory of the defense.

The judge committed no error in charging the jury. Under the facts of this case it does not avail the defense of entrapment that the appellants might have lawfully voted in favor of Henry's interest. The proviso in the instruction—"had there been no extortion"—makes clear to a jury that a defendant charged with extortion cannot ask the jury to ignore the extortive acts and rely simply on the lawfulness of the act for which the extortion is performed. No doubt many defendants charged with extortion have, in exchange for money, rendered acts that are perfectly lawful viewed outside the context of the crime. But the appellants have offered no reason why the lawfulness of their votes should excuse the crime. *See United States v. Jannotti*, 673 F.2d 578, 601 (3rd Cir.1982) (It is not a defense to bribery that, had there been no bribe, the official might have made the very recommendation the briber wanted him to make.), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). In addition, because we find the instruction proper we perceive no risk of prejudice in the written submission. *United States v. Perez*, 648 F.2d 219, 222 (5th Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981).

### Discovery

The appellants sought to discover audio and video tapes and transcripts made in connection with the government's investigation of the Dock Board. The government provided nearly one hundred tapes and accompanying transcripts and, following an *in camera* inspection, the district judge disclosed four additional tapes. The judge withheld several tapes, however. We review for abuse of discretion. *United States v. Ross*, 511 F.2d 757, 762 (5th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

The appellants argue that the district judge denied them the opportunity to present a complete defense. According to the appellants it was essential to the defense of entrapment to show Henry's method of conducting himself under cover. The government argues that Henry's methods and investigations of other individuals are not material to the entrapment defense.

■ A defendant may discover tangible objects in the possession of the government if they are material to the preparation of the defense, if the government intends to use them in its case in chief, or if they were obtained from the defendant. Fed.R. Crim.P. 16(a)(1)(C). Materiality in this context requires "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Ross*, 511 F.2d at 763. The extent of material produced by the government must be considered. *Id.*

■ It was clearly within the district judge's discretion to conclude that Henry's method of investigating other individuals was not an issue in the case against the appellants. As discussed above, entrapment is concerned with the predisposition of the defendant and not with the conduct of the government agent. The great volume of material produced to the appellants permitted them to inquire whether Henry "implant[ed] the criminal design," *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973), and Henry's methods in unrelated cases, such methods being immaterial to the appellants' predisposition, could not "significantly alter the quantum of proof" in the their favor.

*Disqualification of Counsel*

■ Wilford Carter appeared on behalf of Kerlegon and the government moved the court to determine whether a conflict of interest required Carter to be disqualified. Kerlegon agreed to waive any conflict but the district judge granted the government's motion and removed Carter as Kerlegon's counsel. 690 F.Supp. 541. The judge found that a conflict existed between the interests of Carter and Kerlegon under Rule 1.7 of the Rules of Professional Conduct adopted by the Louisiana Supreme Court.[1] The judge noted that Carter was a subject of the Dock Board investigation and that the government intended to call Kerlegon to testify before a Grand Jury regarding Carter's involvement in the Dock Board case. The judge believed that the conflict would be particularly acute if Kerlegon chose to plea bargain, since Carter's interests would be affected if Kerlegon chose to cooperate with the government's investigation as part of the bargain. The judge also found that Carter's representation might violate Rule 3.7.[2] Carter was recorded in two videotapes and since the defendants might seek to use those tapes in their defense, Carter would be forced either to refrain from commenting on the tapes or serve as an unsworn witness from the lawyers' podium.

Kerlegon argues that the disqualification of Carter deprived him of his Sixth Amendment right to assistance of counsel. The government argues that federal courts have an independent interest in ensuring a fair trial free of conflicts of interest. The standard of review was announced by the Supreme Court in *Wheat v. United States,*

486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988):

[W]e think the District Court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.... The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case must be left primarily to the informed judgment of the trial court.

*Id.,* 108 S.Ct. at 1699–1700.

There is little doubt that the district judge was well within his discretion in ordering the disqualification of Carter in spite of Kerlegon's waiver. The Supreme Court has made clear that federal courts have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession," *id.* at 1697, and Carter's representation of Kerlegon was obviously contrary to the Rules of Professional Conduct in the several respects cited by the district judge. In an attempt to distinguish *Wheat* Kerlegon has pointed out that the issue of multiple representation of defendants with conflicting interests, before the Court in *Wheat,* is far different from the issue under the present facts. The argument fails to recognize that the holding in *Wheat* applies with even greater force under the present facts be-

---

1. Loyalty is an essential element in the lawyer's relationship to a client. Therefore:

   \*       \*       \*       \*       \*       \*

   (b) A lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests, unless;

   (1) The lawyer reasonably believes the representation will not be adversely affected; and

   (2) The client consents after consultation....

   La.Rev.Stat.Ann. tit. 37, Ch. 4 App., art. 16, Rule 1.7 (West 1988).

2. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

   (1) The testimony relates to an uncontested issue;

   (2) The testimony relates to the nature and value of legal services rendered in the case; or

   (3) Disqualification of the lawyer would work substantial hardship on the client.

   Id. Rule 3.7(a).

cause Carter's own interests, in addition to the representation of his client's interests, were at stake during the proceedings before the district court.

### Motion for Mistrial

■ The jury listened to recordings made by Henry while reading copies of transcripts of those recordings. At one point the offered portion of the recording terminated, but the transcript of that recording had not been edited properly and the jury accordingly had an opportunity to read a small portion of Henry's conversation that both the prosecution and defense had agreed to excise. The excised portion generally made reference to Kile persuading a former governor of Louisiana to forgo an investigation against him. Kile's attorney moved for a mistrial.

Counsel has not directed this Court to the portion of the record containing the transcript at issue, (and the Court has been unable to locate it), and it is therefore difficult to gauge the impact the transcript would have upon a jury. We note, however, that the transcript excerpt quoted in Kile's brief indicates only that Kile was able to evade an investigation and does not by itself indicate that Kile acted in any improper manner. On the basis of the excerpt in the brief we therefore perceive no prejudice stemming from the disclosure of the excised portion to the jury.

### The Atlantic Vote

■ Kile contends that the district court erred in declining to strike portions of the indictment that referred to the December 1986 transactions between Duhon, Henry, and Henry's attorney regarding the vote on the permit for Atlantic and Gulf Stevedoring. Kile also contends that the court erred in admitting evidence relating to the transactions. Kile argues that he was not involved with the events in December 1986 and that evidence of those events was prejudicial to his defense. The standard of review inquires whether the district judge abused his discretion in refusing to strike the objectionable language and in admitting the disputed evidence. *United States*

*v. Bullock*, 451 F.2d 884, 888 (5th Cir.1971); *United States v. Acosta*, 763 F.2d 671, 693 (5th Cir.), *cert. denied sub nom. Weempe v. United States*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985).

The government set out to prove that beginning in December 1986 the defendants conspired to extort money from Henry with the object of inducing Henry to pay for their votes. "Evidence of the establishment of the conspiracy, identity of the participants, and execution of the scheme was a legitimate part of the government's proof in establishing the conspiracies...." *United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir.1985). The December 1986 events were properly part of the government's proof of the overall conspiracy and the district judge therefore did not abuse his discretion in admitting evidence relating to those events or in refusing to strike the portions of the indictment that referred to those events.

Kile also complains of certain rulings by the trial judge during the examination of Henry's attorney, through whom the 1986 payment to Duhon was allegedly made. Kile first takes issue with an attempt by the government to attack the reputation of Duhon, a nonwitness, through the testimony of the attorney. According to Kile such evidence was prejudicial and impermissible under Fed.R.Evid. 608. The record shows that the government was attempting in a circuitous way to impeach the credibility of the attorney. The government had earlier attempted to portray Duhon as a scoundrel and sought to discredit the attorney by eliciting from him a favorable opinion of Duhon. The testimony was therefore not objectionable as improper evidence of reputation. Kile next argues that the district judge should have granted a mistrial after the government alluded to Henry's attorney as the target of a criminal investigation. The record shows, however, that the government simply asked the attorney "Do you remember what you were advised as to your status in that meeting [with me]?" The judge interrupted the questioning before the matter could be pursued, and there is little chance that the jury could have

interpreted this question to mean that the attorney was a target of an investigation.

### Allen *Charge*

■ Kile contends that the district judge improperly gave the jury an *Allen* charge after the jury indicated it was having difficulty reaching agreement. Kile argues that the jury's expressed desire to refuse supper and continue deliberations shows that the jurors in the minority were coerced into following the majority. A district judge is given broad discretion to evaluate whether an *Allen* charge is likely to coerce a jury into returning a verdict it would otherwise not return. *Nichols,* 750 F.2d at 1266. We see nothing in the jury's refusal of supper to support the interpretation Kile puts upon it, and accordingly conclude that the judge was within his discretion in giving the *Allen* charge.

### *Sentencing*

The district judge sentenced the defendants under Sentencing Guideline § 2C1.1 and determined that the offense level was 13 and the Criminal History Category was I. Under the sentencing table these criteria would require a term of imprisonment of 12 to 18 months. The judge departed from the guidelines, however, and made the following findings:

> I find that the value of this bribe, eleven thousand dollars, doesn't adequately reflect the seriousness of the offense. The fact that the government ran out of money is what limited the amount of the bribe. The bribe was intended to be thirty-six thousand dollars a year for how many years in the future we don't know. I find, and I can't help but consider the fact that all of you took an oath to faithfully and impartially discharge and perform all the duties incumbent upon you as a commissioner for the Port of Lake Charles Harbor and Terminal District, all of which makes me believe that I should depart upwards.

The judge accordingly sentenced each of the appellants to twenty-four months of imprisonment. The appellants argue that the judge improperly departed from the guideline range.

Section 2C1.1(b) permits increases in the offense level in coordination with increases in the amount extorted. Under Application Note 4, however, the Sentencing Commission notes that "In some cases the monetary value of the bribe may not be known or may not adequately reflect the seriousness of the offense." In the present case the judge correctly noted that given the continuous nature of the payments the monetary value of the bribe was not known but could have vastly exceeded the amount actually paid. Accordingly, some upward departure based on a value not calculable under § 2C1.1(b) was permissible.

There is some merit to the appellants' argument that the second reason cited by the district judge in support of departure— the oath taken by the appellants faithfully and impartially to discharge their duties— is a factor already taken into account by § 2C1.1, which expressly deals with extortion under color of official right. But it would be incorrect to conclude that this guideline appropriately takes into account all public officials convicted of corruption, regardless of their office and duties or the manner in which and extent to which they violate the public trust. We find nothing objectionable in a determination that certain office holders charged with certain responsibilities warrant a departure from the guidelines. In any event, the uncertain amount of the bribe is alone adequate to justify the departure.

The judgments of conviction are AFFIRMED.