**UNITED STATES of America, Plaintiff,**

v.

**LIQUID SUGARS, INC. and Warren D. Mooney, Defendants.**

**No. CR S–93–0302 DFL.**

United States District Court, E.D. California.

Sept. 21, 1994.

Don Searles, U.S. Attorney's Office, Sacramento, CA, for plaintiff.

David Bancroft, San Francisco, CA, for defendants.

## ORDER

HOLLOWS, United States Magistrate Judge.

Previously pending on this court's law and motion calendar for September 8, 1994, was defendants' motion for discovery.[1] Having reviewed the parties' papers and heard oral argument, the court now issues the following order.

### BACKGROUND

Defendant LSI and its vice-president and general manager, Warren Mooney (hereafter, collectively "LSI"), were charged on July 9, 1993, with illegal discharge of pollutants and hauled pollutants, aiding and abetting such, and conspiracy to do so pursuant to 33 U.S.C. § 1317(d), 1319(c)(2)(A), and 18 U.S.C. §§ 371 and 2. The government has alleged that sometime prior to 1988 and until approximately July, 1991, LSI conspired to violate the Clean Water Act by hauling and discharging (or arranging for hauling and discharging) food processing wastewater in an illegal manner, either by hauling it to Publicly Owned Treatment Works ("POTW") which were not proper discharge points; by discharging it in POTWs when it contained a pH of less than 5.0; or by discharging it in other waters without a permit.

LSI claims that it requested certain discovery from the government on July 22, 1994, and the government refused to comply. LSI now brings a motion to compel production of documents concerning sampling, testing and underlying analysis of wastewater.

The government has responded that the discovery requested is not evidence in its case or is not "material." Further, the government argues that the information sought is not in the possession of the government, but maintained by state agencies. Additionally, the government contends that LSI's re-

---

1. Defendant Liquid Sugars, Inc. had also noticed a motion for discovery of a tape-recorded state- ment of Robert Kuykendall; however, it withdrew this motion before the instant hearing.

quest is overbroad and unduly burdensome.[2] Further, much of the material is available to LSI through other means, such as the public record or scientific literature.

## DISCUSSION

LSI's discovery request is twofold. Firstly, LSI requests the results of tests performed on wastewater which the government has allegedly not disclosed. These tests include a sample of the Goelitz wastewater taken on May 7, 1991, and four samples taken at LSI's Stockton facility by the Stockton Municipal Utility District on August 7, 1991. Secondly, LSI wishes to acquire documentation underlying or related to all the test results which have been disclosed or which are to be disclosed. Specifically, LSI has requested:

1. Documents demonstrating chain of custody, preservation, or destruction of samples collected or obtained;

2. Documents identifying status of each laboratory's certification for those laboratories involved in testing;

3. Audit reports completed between 1990 and 1992, completed pursuant to certification of involved laboratories;

4. Quality assurance plans for 1991;

5. Batch quality control data for 1991;

6. Laboratory bench sheets reflecting pH, BOD, COD and TSS data;

7. Documents indicating standard operating procedures utilized;

8. Documents reflecting calibration standards utilized;

9. Laboratory preparation logs for the standards utilized;

10. Log books for instruments and equipment utilized;

11. Documents reflecting laboratory unit designations and manufacturer's identification nomenclature for the instruments and equipment utilized;

12. Documents reflecting sampling, collection, testing, analysis, and preservation protocols and procedures followed, ambient conditions, photographs, observations, calculations, and results recorded.

## I. Test Results

Fed.R.Crim.P. 16(a)(1)(D) provides that results or reports of medical examinations or scientific tests in the possession and control of the government that are material to the defense or which the government is going to use at trial are to be provided to a defendant upon request.

LSI questions whether it has reviewed all reports of government acquired test results pertinent to the issues in the case. Although the government represented that LSI now has "everything" in this regard, the undersigned left the hearing with an imprecise idea of what "everything" was. There is no dispute between the parties that LSI is entitled to results from tests performed by the government, or on its behalf, or by non-retained persons/entities who have nevertheless supplied the government with test results, concerning the issues in this case. Therefore, the government is ordered to file and serve within ten days of the filed date of this order a document which provides:

1. A listing of the test results already turned over to LSI; the listing shall reference either the bate stamped pages on which the results appear, or reference the precise document(s) containing the results;

2. A listing of the test results not yet turned over, if any; this listing shall include a concise description of the type of test, the date it was taken and what person/entity performed the testing; the government shall include a copy of the test results with its written response;

3. A listing of the tests performed related to the issues in this case for which no final or definitive results were obtained; the listing shall contain a concise description of the type of test performed, the date of the testing and the person/entity performing the testing. The description shall also contain a reason why no results are available.

---

2. The government provides no support for its assertion of overbreadth and burden. This court will therefore not discuss the issue.

## II. *Underlying Documentation*

The major issue in contention is the government's obligation to turn over documentation underlying the test results. As previously seen, LSI seeks documentation directly related to the test itself, e.g., bench notes, specific methodologies used, and documentation indirectly related such as quality control reports for the laboratories performing the tests. The court will analyze the government's obligation to disclose such underlying documentation under both Fed.R.Crim.P. 16(a)(1)(D) and 16(a)(1)(C).

### A. *The Ninth Circuit Has Precluded Disclosure of Underlying Information Under Rule 16(a)(1)(D), But Not Under 16(a)(1)(C)*

In *United States v. Iglesias,* 881 F.2d 1519, 1523 (9th Cir.1989), the Ninth Circuit specifically held that "log notes" associated with scientific results or reports are not discoverable under Rule 16(a)(1)(D). The court reasoned that under Rule 16(a)(1)(D)—which states that the defendant can "inspect and copy or photograph any result or report of . . . scientific tests or experiments"—log notes do not qualify as "results" or "reports." In addressing the practical effects of its ruling, the court noted that the actual final reports are sufficient to enable the defendant to adequately cross-examine the government expert; that, unlike final reports, preliminary notes are much more likely to be distorted and misused; and that there had been no allegations by the defendant that the log notes must be disclosed under *Brady. Iglesias,* 881 F.2d at 1524.

However, the dissent in *Iglesias* specifically reminded the majority that its ruling did nothing to preclude the defendant from successfully bringing the same motion under Rule 16(a)(1)(C). Rule 16(a)(1)(C) provides that the government shall, upon request, permit the defendant "to inspect and copy or photograph books, papers, or documents . . . which are [in the government's] possession and material to the preparation of the defen-

dant's defense." The dissent reasoned that such log notes, if they could not be discovered pursuant to Rule 16(a)(1)(D), could be discovered as documents under Rule 16(a)(1)(C).

Although the majority in *Iglesias* stated that requiring the production of "log notes" under Rule 16(a)(1)(D) "would place unreasonable burdens on the government in future cases," this court is not convinced that the Ninth Circuit therefore intended to exclude the production of such documents under any Rule 16 discovery vehicle. Indeed, the majority in *Iglesias* clearly had the opportunity to read the dissent before publication. The fact that the majority still chose to premise its decision specifically, exclusively and repeatedly on the provisions of Rule 16(a)(1)(D) without referencing the dissent's comments with regard to Rule 16(a)(1)(C) leads the court to believe that the Ninth Circuit intended to either leave the door open to such discovery, or leave the deciding of the precise issue to another day.

This court is bound by the Ninth Circuit's majority opinion in *Iglesias* as it pertains to subdivision (a)(1)(D) of Rule 16. However, this court may note that the *Iglesias* court's rationale that a party will not need underlying information about scientific tests prior to trial is not persuasive. For the reasons explained at length below, it is not consonant with good trial preparation to await analyzing scientific foundational information, at times quite complex, until such time as the government expert is relating the foundation at trial for the first time. Therefore, this court will only abide by the strict holding of *Iglesias,* as limited to subdivision (a)(1)(D).[3]

### B. *Materiality Under Rule 16(a)(1)(C); LSI Is Entitled To Only Some Of The Documentation Requested*

Rule 16(a)(1)(C) provides:

**(C) Documents and Tangible Objects.** Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers,

---

**3.** The government correctly relies on *Iglesias* in support of its position that underlying documents are not subject to discovery under Rule 16(a)(1)(D); however, its citation of *United States*

*v. Berry,* 636 F.2d 1075, 1082 (5th Cir.1981), is incorrect as that opinion was vacated. *United States v. Berry,* 670 F.2d 583 (5th Cir.1982).

documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed.R.Crim.P. 16(a)(1)(C).

■ The Ninth Circuit has tasked the defendant with more than generally asking for "helpful evidence" or "relevant evidence," or some other such broadly phrased request. A prima facie showing of materiality is required under the rule. *U.S. v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990). This required showing has been described as necessitating more than conclusory allegations or a general description of the discovery sought. *Id.* The information sought must be helpful to defendant's case, and defendant must present facts tending to show that the government has possession of this information. *Id. See also, United States v. Cadet,* 727 F.2d 1453, 1466 (9th Cir.1984). However, the Ninth Circuit has not specifically defined "materiality" or "helpful," but has left that determination largely in the discretion of a district court. *Id.*

■ The phrase "material to the preparation of the defendant's defense" is one that causes practical problems on both sides of the discovery equation. On the one hand, a defendant's counsel cannot know in most cases the precise nature of all the documents held by the government. Defense counsel can reasonably identify precise *categories* of documents that should be available, but the defense counsel is going to be hard pressed to specifically argue materiality of individual documents. On the other hand, it is equally clear that the discovery rules do not require "open file" discovery with the defendant being allowed to browse at will through the prosecution files. *Taglianetti v. United*

*States,* 394 U.S. 316, 317, 89 S.Ct. 1099, 1100–01, 22 L.Ed.2d 302 (1969). Moreover, a good deal of inculpatory evidence will have already been turned over as evidence that the government will be using in its case-in-chief. The problem here is to define "materiality" in such a way that it does not merely duplicate other discovery information definitions. Rule 16(a)(1)(C) was not intended to impose a completely redundant discovery obligation.

■ This court defines "material information" for Rule 16(a)(1)(C) purposes as that information, not otherwise provided for or precluded by discovery rules, which is significantly helpful to an understanding of important inculpatory or exculpatory evidence. " 'The materiality requirement typically 'is not a heavy burden,' rather, evidence is material as long as there is a strong indication that ... [the evidence] will 'play *an important role* in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' " *United States v. Jackson,* 850 F.Supp. 1481, 1503 (D.Kan.1994) quoting *United States v. Lloyd,* 992 F.2d 348, 351 (D.C.Cir.1993) (emphasis added).[4] For example, if the government plans to use the results of scientific tests as evidence, data and reports which *directly* underlie those results are generally important to an understanding of the evidence.

■ Where scientific methodology or data is involved in proving a defendant's guilt, it is unreasonable to expect defense counsel to be able to delve into technical aspects of that methodology/data on the spot at trial. As a practical matter, this type of information is often very difficult to prepare for in advance, despite the use of experts, as the precise methodology utilized by government experts will not often be known without advance discovery of the underlying methodology/data. Further, the government will be required to establish a foundation for the test

4. The court has included both inculpatory and exculpatory information in its definition. There is no justifiable reason to withhold otherwise producible information or evidence simply because it is inculpatory—such information may be as "material" to the defense as exculpatory information. Defendants have a right to analyze and

prepare for facially damning evidence. Although safety and burden considerations, at times, justify the withholding of discovery information, there is entirely too much "hide-the-ball" in criminal discovery with respect to easily producible documents.

results when it first puts its expert on the stand at trial. That foundation is the information which defendants now seek. Since the foundation is an essential element to the government's case-in-chief, it necessarily becomes "helpful to the defense." Moreover, for issues in which scientific data will be utilized, there are no safety considerations which would be compromised by this rule. By having access to the requested information, the defense will not unfairly jeopardize the government's case—it will merely be able to properly challenge that case.[5]

■ On the other hand, requests which are designed to generally cast for impeachment material, and which are not directly pertinent to particular tests, are not material. Such requests are simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful.

The court's definition of materiality for purposes of reviewing discovery requests *pre-trial* does not conflict with established precedent that imposes a more strict materiality standard when seeking to reverse a conviction on appeal. *See,* e.g., *United States v. Vue,* 13 F.3d 1206 (8th Cir.1994). In *Vue* the court rejected the claim of the defendant that denial of discovery requested pursuant to Rule 16(a)(1)(C) required reversal because

defendants had not shown that the outcome of the trial would probably have been different. *Vue,* 13 F.3d at 1208–09. *Vue* applied the traditional materiality test on appeal set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[6]

This court has no quarrel with the application of such a test on appeal. The Court of Appeal has the benefit of hindsight, i.e., it can assess the significance of the requested, but not disclosed, evidence against the backdrop of precisely what facts were introduced at trial which demonstrate the defendant's guilt. Prior to trial, this court has no such benefit. Requiring a district court to predict what will change the verdict months before it is ever decided is a markedly impossible directive. This court cannot prognosticate *pre-trial* to a probability that a defendant will be acquitted if his or her discovery is allowed. Nor can this court even determine pre-trial whether the granting of the request will significantly alter the quantum of proof in a defendant's favor. The government is not in the habit of setting forth all its planned evidence at a pre-trial discovery hearing. Rather, the test set forth by this court for *pre-trial* assessments of materiality—significantly helpful to an understanding

---

5. LSI has also cited an out of circuit case which the court finds instructive. Although not relying on Rule 16(a)(1)(C), the court in *United States v. Dioguardi,* 428 F.2d 1033 (2d Cir.1970), required production of a computer program, as well as flow charts used in preparation of the program, in addition to the results of the computer's operations. The court explained:

We fully agree that the defendants were entitled to know what operations the computer had been instructed to perform and to have the precise instruction that had been given. It is quite incomprehensible that the prosecution should tender a witness to state the results of a computer's operations without having the program available for defense scrutiny and use on cross-examination if desired.

*Id.* at 1038.

Other cases, though not decided on the basis of Rule 16, have also required production of the data underlying computer programs. *See United States v. Cepeda Penes,* 577 F.2d 754, 760–61 (1st Cir.1978) (reasoning that methods used in programming computer and effectiveness of human

input would otherwise be difficult to discover); *United States v. Liebert,* 519 F.2d 542, 547 (3rd Cir.1975) (finding that "a party seeking to impeach the reliability of computer evidence should have sufficient opportunity to ascertain by pre-trial discovery whether both the machine and those who supply it with data input and information have performed their tasks accurately"). *But see U.S. v. Oshatz,* 912 F.2d 534, 543 (2d Cir.1990) (pointing out that goal is to ensure that defense has sufficient time to check validity of program and cross-examine government experts regarding error in calculations, thus finding no error in production of information during trial). The rationale behind allowing evidence of data underlying the computer programs makes sense in the context of scientific data also.

6. *See also, United States v. Reeves,* 892 F.2d 1223, 1226 (5th Cir.1990) interpreting materiality in the Rule 16 context as requiring " 'some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.' "

of important evidence—is a workable, fair, non-burdensome test.[7]

■ Turning to the specific requests, this court finds that LSI's requests have in part met this court's definition of materiality, and that LSI has demonstrated this materiality by way of specific exhibits. As previously categorized by this court, the documents referenced by Requests 1 (chain of custody), 6 (laboratory bench sheets), 7 (testing procedures utilized), 8 (calibration standards utilized), 9 (laboratory preparation logs), 11 (identifying information for instruments and equipment utilized), and 12 (other methodologies actually employed for the testing) are documents directly pertinent to the meaningful understanding of, or foundation for, the test results. LSI has submitted the declaration of its chemical analyst expert, Dr. Kagel, who has declared that the above documentation is necessary to determine the validity of the test results.[8] In addition, several exhibits obtained from discovery thus far indicate potential problems in the government's testing, e.g., exhibit C commenting on the difficulties in running a test and problems with "COD's." Documents in the above categories, which are in the possession and control of the government (defined, *infra*), and which are pertinent to specific test results disclosed by the government, shall be produced within twenty days of the filed date of this order.[9]

■ However, the remainder of LSI's requests run afoul of the requirement for a demonstrated showing of materiality. Requests 2 (laboratory certifications), 3 (general audit reports of laboratory performance), 4 (quality assurance plans for 1991), 5 (batch quality control data for 1991), and (6) general log books for instruments used can be characterized as speculative impeachment requests. Except for the unsubstantiated hope that LSI *might* find something amiss with the general performance of the various laboratories, LSI has proffered nothing to justify the materiality of their requests.

### III. *Materials In Possession of the Government*

Lastly, the government contends that much of the discovery requested by defendants is not in the government's possession. In its reply brief, LSI asserts that the U.S. Attorney's Office conducted the investigation, with "discrete" assistance from state and local agencies. Further, LSI claims that all tests were either performed at the direction of the federal government, or that the tests directly benefitted the federal government.

In its November 3, 1993 order, this court set forth the standard for determining whether discovery is in the possession of the government. The pertinent portion of that order is restated herein.

The issue here is the scope of the government's obligation to produce statements or other Rule 16 discovery. Defendants seek an order requiring the government to produce materials in the possession of not only "the four principal agencies," but also any other agencies who have assisted the primary agencies in the underlying investigation.

The government contends that it has a duty to produce only discovery in its own

---

7. The court's view is in accord with *Mandel* in which the Ninth Circuit held that a defendant's showing of materiality before the trial court need not be as strong as it later needs to be to overturn a conviction. *Mandel*, 914 F.2d at 1219 n. 5.

8. The government may argue that such is not the case, and that defendants are attempting to make a monumental morass out of a relatively simple testing utilizing "standard" procedures. This court, with its very basic, limited knowledge of chemistry in this area (chemistry class pH tests using litmus paper) is not prepared to make this important ruling at the discovery stage. There is no reason not to accept the declaration of Dr. Kagel at face value for the purposes of this discovery motion. Moreover, the allusion to "standard" tests is reminiscent of the "usual stipulations" given in civil deposition discovery. Everyone purports to know without asking the content of the "usual stipulations" until a dispute arises; the ephemeral nature of the parties' understanding is then quite apparent.

9. The court has no doubt that the United States Attorney will use best efforts to acquire and disclose the appropriate documents. Defendants must realize that there may be no documents or only partial documentation in existence for particular tests. To the extent that the government has already disclosed some underlying documentation, the government shall reference such previous disclosure in a signed writing to LSI.

possession and that obtained from the EPA and Oakland Police Department. It has also voluntarily produced materials provided by entities which have assisted in the investigation, such as the East Bay Municipal Utilities District, Stockton Municipal Utilities District, and the California Department of Fish and Wildlife, but does not concede any obligation to produce materials obtained from these assisting agencies.

The concept of who is the "government" for criminal discovery purposes is an important one. Information "in the possession of the government" must be disclosed in a criminal prosecution upon request governed by the Federal Rules of Criminal Procedure. However, for obvious practical reasons, not every governmental agency can be considered as part of the "government" for discovery purposes. *See, United States v. Gatto,* 763 F.2d 1040 (9th Cir.1985) (holding that under Rule 16(a)(1)(C), the government's disclosure obligation is triggered only with respect to documents within the government's actual possession, custody or control); *United States v. Chavez–Vernaza,* 844 F.2d 1368, 1377 (9th Cir.1987) (following *Gatto* in concluding that documents in the possession of state officials are not within the custody or control of the federal government which has the duty to obtain them); *United States v. Trevino,* 556 F.2d 1265 (5th Cir.1977).

■ The general rule set out in the above cases is that the "prosecution" is the government for discovery purposes. No one disputes the fact, however, that the investigating component(s) for the Department of Justice, the EPA, for example, would be considered as part of the "prosecution" or "government" when disclosure is required in a case under the active cognizance of the EPA. Clearly, in most criminal prosecutions, it is the investigating agency which holds the facts required to be disclosed, and it is only in giving those facts to the prosecution does a criminal case get off the ground. In a case involving the IRS as an investigating agency, the Ninth Circuit has held that the IRS was part of the "government" for discovery purposes. *United States v. Bryan,* 868 F.2d 1032, 1036–37 (9th Cir.1989). What is disputed here is whether a state agency involved in the investigation of this case is an arm of the federal government for prosecution purposes. Unlike the EPA, a state agency is not a component of the Department of Justice or the federal government. Except as discussed below, any materials which are in the possession of the various state agencies are generally not in the government's actual possession, custody or control, and therefore they need not be disclosed. *See, also, United States v. Aichele,* 941 F.2d 761 (9th Cir.1991).

LSI asks the court to consider cases which define possession as materials which the prosecutor has knowledge of and access to, citing *United States v. Bryan, supra. Bryan* was limited to a situation involving another *federal* agency; however, the court did state that each situation must be decided on a case-by-case basis. The court stated:

> [t]he government's obligation under Rule 16(a)(1)(C) should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case.... The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.

*Id.* at 1036. (citation omitted).

■ Nevertheless, LSI's request for an expansion of this court's prior order is well taken insofar as it became apparent at the hearing that the government will necessarily rely upon, as part of its case-in-chief, expert analyses prepared by various non-federal entities and persons not employed by the federal government. In essence, persons within these entities, or other non-affiliated persons are some of the expert witnesses that the government will present at trial. The discovery rules are not so stilted as to provide that the government's expert witnesses are not within the control of the government. Thus, while non-federal entities, and certain federal entities may not normally be within the control of the government for Rule 16 purposes, those entities come within the government's control when the government plans to utilize

personnel within the entities as its expert witnesses.[10]

▮ Thus, the previous directive in this order that the government produce certain documents underlying test results is limited to production of those documents within the government's possession or control. As defined in this order, the entities/persons within the control of the government include the U.S. Department of Justice, the Environmental Protection Agency, and any entity/person which has provided test results pertinent to the issues in this case which the government plans to present in its case-in-chief.

## CONCLUSION

Accordingly, defendants' joint motion for discovery is granted in part for the reasons stated within this opinion.

IT IS SO ORDERED.

_____

10. Those witnesses presenting the results of scientific tests would be considered expert witnesses.