IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 17, 2008

Charles R. Fulbruge III
Clerk

No. 08-40120

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ELOY SANCHEZ GUERRERO

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge.

Eloy Sanchez Guerrero ("Guerrero") pled guilty to criminal conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). He appeals the denial of two pre-conviction motions and the calculation of his sentence. We affirm his conviction and sentence.

## I. FACTS AND PROCEEDINGS

On September 5, 2006, Guerrero was indicted on allegations that he conspired with others to possess with intent to distribute cocaine and marijuana. Several superceding indictments followed, and on February 22, 2007, a third superceding indictment was returned containing fifteen counts, including conspiracy to possess with intent to distribute cocaine and marijuana, possession

of a firearm by a felon, and engagement in a RICO conspiracy to distribute controlled substances and protect and distribute the proceeds and profits from 1987 through 2006. The indictment alleged twenty-seven overt acts in furtherance of the two-decade conspiracy. The government claimed that Guerrero was the head of an enterprise responsible for the distribution of 1,900 kilograms of cocaine and 73,326 kilograms of marijuana. His brother, Vincente Guerrero, was also allegedly in a leadership position in this enterprise.

On October 13, 2007, the district court disqualified Guerrero's defense counsel, Guy Lee Womack ("Womack"), based on its finding that Womack had actual and potential conflicts of interest in representing Guerrero. The parties agree that Womack represented both Guerrero and his brother as co-defendants, and also represented at least one witness ("Witness")[1] who was attempting to obtain a reduction in his sentence under Rule 35 of the Federal Rules of Criminal Procedure by cooperating with the government. Womack met with both brothers and Witness, informed them of possible conflicts, and obtained waivers from all three. In informing Guerrero of Witness's cooperation, Womack both identified Witness and told Guerrero that Witness was incarcerated in the same facility. Womack argued before the district court that at trial he would hire other counsel to cross-examine any cooperating witnesses that he represented.

On April 25, 2007, the district court denied Guerrero's motion to suppress evidence seized from his home in Roma, Texas. He claims that the government lacked probable cause for the issuance of a search warrant.

---

[1] Much of the record of this case remains sealed, so we will refrain from naming this cooperating witness.

Notwithstanding the foregoing, Guerrero pled guilty to the RICO charge on August 14, 2007 pursuant to a plea agreement, and the other charges against him were dismissed. He did not preserve any rights of appeal, and specifically waived his right to appeal any sentencing issues in his written plea agreement. The district court sentenced Guerrero to 360 months, despite the government's recommendation of 240 months.

Guerrero appeals his conviction and sentencing on three grounds: (1) evidence from his home in Roma, Texas was improperly seized; (2) his original counsel should not have been disqualified; and (3) the district court miscalculated his sentence.

## II. DISCUSSION

### A. Suppression of Evidence

We have often held that "'by entering a plea of guilty, a defendant ordinarily waives all non-jurisdictional defects in the proceedings below,' . . . and 'if the record contains no manifestation of a reservation of appellate right, the plea is presumptively unconditional and an appellate court may not reach the merits of the defendant's appeal.'" United States v. Sealed Appellant, 526 F.3d 241, 242 (5th Cir. 2008) (quoting United States v. Bell, 966 F.2d 914, 915, 917 (5th Cir. 1992)). This doctrine applies to denials of motions to suppress. See, e.g., id. at 242–43; United States v. Stevens, 487 F.3d 232, 238 (5th Cir. 2007), cert. denied, 128 S.Ct. 336 (2007); United States v. Wise, 179 F.3d 184, 186 (5th Cir. 1999). By unconditionally pleading guilty, Guerrero has waived his right to appeal the denial of his motion to suppress, and we need not reach the merits of his argument.

### B. Choice of Counsel

(1)    Waiver

Before reaching the merits of Guerrero's choice of counsel claim, we must again consider if he has waived his right of appeal with his guilty plea. Guerrero argues that he was denied his choice of counsel when Womack was disqualified. This argument does not raise a jurisdictional defect.  The Supreme Court, however, has recently held that the "erroneous deprivation of the right to counsel of choice" is a "structural error" in violation of the Sixth Amendment and is not subject to harmless-error analysis.  United States v. Gonzalez-Lopez, 548 U.S. 140, 150–52 (2006).  Other "structural errors" include the denial of counsel, the denial of the right of self-representation, and the denial of the right to a public trial.  Id. at 149.  In Gonzalez-Lopez, the Court specifically noted that:

> [T]he choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial.  In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the framework within which the trial proceeds, or indeed on whether it proceeds at all. . . . Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of trial at all.

Id. at 150 (internal quotation omitted).  Because Gonzalez-Lopez had been erroneously denied the counsel of his choice, the Supreme Court reversed his conviction and remanded the case for a new trial.

While Gonzalez-Lopez involved a trial rather than a guilty plea, it is obvious that the choice of counsel may seriously impact a defendant's decision to plead guilty.  If a defendant is erroneously denied the counsel of his choice, it is a structural error in the trial that brings into question the voluntary and intelligent character of the guilty plea itself.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973).  But it is not subject to harmless-error analysis, as that "would

4

be a speculative inquiry into what might have occurred in an alternate universe." Gonzalez-Lopez, 548 U.S. at 150. As such, even in cases where a defendant has pled guilty, we must consider whether the district court erroneously denied a defendant the right to his counsel of choice, and waiver will not apply.

### (2) Standard of Review

"[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Gonzalez-Lopez, 548 U.S. at 144 (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624–25 (1989)). But the Sixth Amendment also guarantees representation that is free from conflicts of interest. See Wood v. Georgia, 450 U.S. 261, 269–71 (1981). While a defendant can knowingly and intelligently waive conflicts of interest, the district court is allowed "substantial latitude" to refuse such waivers in cases of either actual or potential conflict. Wheat v. United States, 486 U.S. 153, 163 (1988); see also United States v. Gharbi, 510 F.3d 550, 553 (5th Cir. 2007) ("[T]here is a presumption in favor of a defendant's counsel of choice, but that presumption may be overcome by an actual conflict of interest, or by a showing of a serious potential for conflict."). Relying on Wheat, a string of Fifth Circuit cases has held that the correct standard for reviewing a district court's disqualification of a defense attorney for conflict of interest is abuse of discretion.[2]

---

[2] See Gharbi, 510 F.3d at 553; United States v. Millsaps, 157 F.3d 989, 995 (5th Cir. 1998); United States v. Sotelo, 97 F.3d 782, 791 (5th Cir. 1996); United States v. Vasquez, 995 F.2d 40, 42 (5th Cir. 1993); United States v. Reeves, 892 F.2d 1223, 1227 (5th Cir. 1990).

Guerrero nonetheless argues that there is a split within this circuit on the standard of review, and cites United States v. Vaquero, 997 F.2d 78 (5th Cir. 1993), and United States v. Snyder, 707 F.2d 139 (5th Cir. 1983), as holding that the standard is simple error, which requires de novo review. Vaquero is not on point; it involved the question of whether a waiver of conflicts of interest actually waived the defendant's rights, not whether disqualification was appropriate. 997 F.2d at 89–92. Snyder, on the other hand, did hold that the standard of review in these cases is simple error, 707 F.2d at 144, but its holding on the standard of review has been superceded by Wheat and the resulting cases from this court. Only if the district court has abused its substantial discretion in this area will we reverse the decision on appeal.

(3) Analysis

The district court did not abuse its discretion in disqualifying Guerrero's attorney, Womack. Womack was attempting to represent Guerrero and his brother, who were both in leadership positions in a criminal enterprise spanning two decades. He was also attempting to represent Witness, who was testifying against Guerrero in exchange for a reduction in his sentence.

Guerrero insists that this court must defer to his waiver of any conflict of interest. He cites United States v. Garcia for the proposition that "[i]f defendants may dispense with the right to be represented by counsel altogether, it would seem that they may waive the right to have their retained counsel free from conflicts of interest." 517 F.2d 272, 277 (5th Cir. 1975) (internal citations omitted). But the Supreme Court found in Wheat that "no such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice." 486 U.S. at 160. Courts have an "independent interest" in ensuring the fairness

6

of trials, even if the defendant has waived any conflicts of interest. Id.; see also United States v. Izydore, 167 F.3d 213, 221 (5th Cir. 1999) ("[I]t is clear that a defendant's waiver does not necessarily preclude a district court from rejecting a defendant's counsel of choice when the overall circumstances of a case suggest a conflict of interest may develop."). To the extent that Garcia allowed an absolute waiver of any conflicts of interest, it is no longer good law. The only other case cited by Guerrero is United States v. Blau, 159 F.3d 68 (2nd Cir. 1998). But Blau did not involve disqualification of counsel; instead it was a retrospective examination to determine if a defendant's waiver of conflicts of interest was effective in waiving his rights. Id. at 74–75. Guerrero's waiver of conflicts of interest will certainly operate to waive his rights, but it will not stop this court or district courts from "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160.

As the Supreme Court noted in Wheat, "multiple representation of criminal defendants engenders special dangers of which a court must be aware." Id. at 159. A conflict of interest may "prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." Id. at 160 (quoting Holloway v. Arkansas, 435 U.S. 475, 490 (1978)). Such conflicts may also preclude a defense attorney from "exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution . . . ." Holloway, 435 U.S. at 490.

In this case, all of these potential conflicts were present. Each brother would have an interest in downplaying his own culpability while emphasizing the responsibility of the other in the organization. Given the length of the conspiracy, it is possible that evidence implicating one of the defendants in some of the transactions involved would have been favorable to the other defendant. And a joint representation would have hindered the ability of either defendant to testify against his brother in exchange for a reduced sentence. The district court certainly did not abuse its discretion in determining that Womack could not adequately represent both men at trial.

In addition to the potential conflicts of joint representation, the district court also found actual and potential conflicts with Womack's representation of Witness. Already in custody, Witness volunteered to testify against Guerrero in exchange for a reduction in his sentence. Womack had represented Witness during his trial and acknowledged at the disqualification hearing that he continued to represent him. Womack also acknowledged informing Guerrero of Witness's identity and that he was being detained in the same facility, thereby creating a serious security issue as to Witness's safety. Womack arguably may have placed one of his clients in danger through his representation of another client. Womack did receive a waiver of any conflicts of interest. However, "the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." Wheat, 486 U.S. at 163. Representation of a government witness, testifying in exchange for a reduction in sentence, while also representing the defendant he is testifying against raises serious conflicts of interest.

Womack argued that he could simply hire another attorney to cross-examine Witness, and that he would not inform that attorney of any confidential

8

information he had gleaned from his previous representation. This arrangement is similar to the one rejected by this court in Gharbi, 510 F.3d 550. In that case, defendant Gharbi attempted to have an attorney brought on as co-counsel who had represented his daughter in negotiating a plea bargain under which she agreed to testify against Gharbi. Id. at 552. The district court found that this created an "irreconcilable conflict of interest" because if Gharbi's defense team pulled punches in cross-examining his daughter, they would render Gharbi ineffective assistance of counsel, while if they attacked her strongly, they might jeopardize her plea agreement. Id. at 553. "In order to protect the rights of all parties and preserve the appearance of fairness, the district court held that Gharbi and [his daughter] needed separate and independent counsel." Id. at 553–54. This court found the district court's decision "well within the bounds established by Wheat and . . . consistent with our precedent." Id. at 554.

Because the district court held that Womack would have a conflict of interest between attempting to discredit Witness or going easy on him to the detriment of Guerrero, it disqualified Womack as counsel. The district court's decision to disqualify Womack, in light of his joint representation of Guerrero and his brother as well as a cooperating witness, is in line with our precedent and was not an abuse of discretion.

## C. Sentencing

Guerrero contends that the district court miscalculated his sentence of 360 months, and should have followed the government's recommendation of 240 months. But Guerrero pled guilty pursuant to a plea agreement with an explicit waiver of his right to appeal his sentence. We review waivers of appellate rights in plea agreements de novo. United States v. Palmer, 456 F.3d 484, 488 (5th Cir. 2006). A defendant may waive his appellate rights in a plea agreement if (1) the waiver was knowing and voluntary, and (2) the waiver applies to the circumstances at hand, based on the plain language of the agreement. Id.; see also United States v. Bond, 414 F.3d 542, 544 (5th Cir. 2005).

Guerrero does not even mention his plea agreement, let alone contend that it was involuntary. Because he indicated before the district court that he read and understood the plea agreement, which included a clear waiver of appellate rights, and acknowledged that he understood specifically that he was giving up his appellate rights, his waiver was both knowing and voluntary. See Bond, 414 F.3d at 544. Guerrero also does not contend that the waiver did not apply to the circumstances at hand. He waived his right to appeal the sentence imposed and the manner in which it was calculated. Though we construe appellate waivers narrowly, and against the United States, see Palmer, 456 F.3d at 488, Guerrero's waiver is broad and certainly covers a dispute about any alleged miscalculation of his sentence. Because Guerrero has waived his right to appeal his sentence, we need not address the merits of his argument.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.