**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 18, 2013

No. 11-41256

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RICHARD ALAN ARLEDGE; STEVE HAM,

Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 4:09-CR-89-1

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

PER CURIAM:[*]

This case arises from the defendants' sale of luxury cars to numerous criminals, such as drug dealers and pimps. Defendant Richard Arledge owned a Suzuki dealership and managed a financing office, and Defendant Steve Ham was his right-hand man. The defendants, knowing the purchasers of the luxury cars were criminals, would accept large cash payments from customers, allowed these customers to list innocuous employment positions (such as "barber") on their loan applications, permitted the customers to sign "lease" agreements

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41256

despite that they were actually purchasing the cars, and often failed to report the cash payments they received to the IRS, even when these payments surpassed the $10,000 threshold, or reported them using straw buyers' names.

The government charged the defendants and fourteen others with conspiracy to commit money laundering, 18 U.S.C. § 1956(h). The government additionally charged Arledge with laundering the proceeds of illegal activity, 18 U.S.C. § 1956(a)(3)(B), and Ham with laundering the proceeds of drug trafficking, 18 U.S.C. § 1956(a)(1)(B)(i). Arledge was convicted of conspiracy to commit money laundering, while Ham was convicted of both conspiracy to commit and substantive money laundering. The defendants raise several issues on appeal. We AFFIRM their convictions, finding they fail to identify any reversible error.

I.

First, both defendants contend the government presented insufficient evidence to convict them of conspiracy to commit money laundering because there was no evidence that the financial transactions at issue were designed (1) "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds," 18 U.S.C. § 1956(a)(1)(B)(i), or (2) "to avoid a transaction reporting requirement under State or Federal law," 18 U.S.C. § 1956(a)(1)(B)(ii). This argument is inapposite. This Court has "consistently held that a conspiracy charge need not include the elements of the substantive offense the defendant may have conspired to commit." *United States v. Threadgill*, 172 F.3d 357, 367 (5th Cir. 1999) (citing *United States v. Fuller*, 974 F.2d 1474, 1479-80 (5th Cir. 1992), *cert. denied*, 510 U.S. 835 (1993); *United States v. Graves*, 669 F.2d 964, 968 (5th Cir. 1982)); *see also United States v. Dong*,  420 F. App'x 309, 319 (5th Cir. 2011) (unpublished) (finding "the government did not have to prove concealment to sustain [the defendant's] conspiracy conviction under § 1956(h)").

No. 11-41256

Accordingly, defendants' arguments regarding conspiracy do not identify cognizable deficiencies in the government's case.

## II.

Next, Ham argues the evidence was insufficient to sustain his conviction for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i). We review claims for insufficient evidence *de novo* when the defendant properly moves for a Rule 29 judgment of acquittal before the district court. *United States v. Harris*, 666 F.3d 905, 907 (5th Cir. 2012) (citing *United States v. Penaloza-Duarte*, 473 F.3d 575, 579 (5th Cir. 2006)). "All evidence is reviewed in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established [the defendant's] guilt beyond a reasonable doubt." *Id.* This review is "highly deferential to the verdict." *United States v. Elashyi*, 554 F.3d 480, 492 (5th Cir. 2008) (internal quotations and citations omitted).

Money laundering concealment requires the defendant to know "that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(B)(i). "Several circuits, including this one, have recognized that the government need not 'prove with regard to any single transaction that the defendant removed all trace of his involvement with the money or that the particular transaction charged is itself highly unusual.'" *United States v. Tencer*, 107 F.3d 1120, 1129 (5th Cir. 1997) (quoting *United States v. Willey*, 57 F.3d 1374, 1386 (5th Cir.), *cert. denied*, 516 U.S. 1029 (1995)).

There is ample evidence to sustain Ham's conviction for money laundering concealment. As in our recent *Brown* case, the purchases here were made in cash, rendering them difficult to trace, and even payments above the $10,000 reporting requirement were not reported to the IRS or were reported in the

name of straw buyers.[1] *United States v. Brown*, 553 F.3d 768, 786-87 (5th Cir. 2008). Moreover, and again similar to *Brown*, there is significant evidence that Ham and certain criminal-customers, including Stoney Kidd, moved the money in the way they did for the purpose of concealing their true actions from the government. *See Cuellar v. United States*, 553 U.S. 550, 566 (1994) ("*[H]ow* one moves the money is distinct from *why* one moves the money[.]"). The government presented evidence, for example, that Kidd signed a "lease"—despite that he was purchasing the car—so that if law enforcement later seized the car, the dealership could recover it.

Additionally, Kidd asserted in his lease that the money he used to pay for the car derived from his work as a barber—and Ham knew this assertion was untrue.[2] *See United States v. Wilson*, 77 F.3d 105, 109 (5th Cir. 1996) (sufficient evidence of concealment when, *inter alia*, defendant asserted money for his purchases derived from an inheritance and a job settlement).[3] These misrepresentations, combined with Kidd's admission at trial that he in fact used money from drug sales to purchase the Maserati, and Ham's knowledge as to the true source of the funds and true nature of the sale, are more than sufficient evidence of concealment to sustain Ham's money laundering conviction.

---

[1] Several payments were reported late. Money laundering may also occur when the transactions are designed "to avoid a transaction reporting requirement under State or Federal law," 18 U.S.C. § 1956(a)(1)(B)(ii), but this is not the type of money laundering the government alleged here. Indeed, it seems many of the payments were not specifically designed to avoid reporting requirements, but, instead, the defendants failed to abide by these requirements.

[2] Among other evidence is the conspicuous fact that a "barber" had $21,000 in cash available to purchase a Maserati. Kidd also later purchased an Aston Martin.

[3] *See also Tencer*, 107 F.3d at 1130 (sufficient evidence included the defendant's false statements to bank officials); *Wilson*, 77 F.3d at 109 (sufficient evidence existed, including that the defendant told the seller of the car to lie to the IRS); *United States v. Gallo*, 927 F.2d 815, 822 (5th Cir. 1991) (sufficient evidence when, *inter alia*, the defendants made two false exculpatory statements).

No. 11-41256

III.

The defendants next contend they are entitled to a new trial because the prosecutor committed serious misconduct during his closing argument. This argument is without merit. The burden of establishing that the prosecutor made an improper remark warranting a new trial is substantial. *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005). In determining whether a defendant can satisfy this burden, we ask "whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *United States v. Guidry*, 456 F.3d 493, 505 (5th Cir. 2006) (quoting *Mares*, 402 F.3d at 515) (internal quotations omitted). We consider "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* (quoting *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir.1994)). Each of these factors weighs against the defendants.

First, the defendants point to only a couple of statements the prosecutor made in a lengthy closing argument following a thirteen-day trial. But "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *Guidry*, 456 F.3d at 505 (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). Moreover, due to "the critical fact that these statements were 'neither persistent nor pronounced when viewed within the context of the entire closing argument,' *Bradford v. Whitley*, 953 F.2d 1008, 1013 (5th Cir.1992), it is unlikely that the jury was led astray." *United States v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005). Because the evidence of prejudice is minimal at best, because the district judge adequately informed the jury that lawyers' statements

No. 11-41256

are not evidence,[4] and because of the overwhelming evidence of Ham's guilt, discussed above, the defendants are not entitled to a new trial.

IV.

Arledge further argues the district court erred in disqualifying his attorney. We review a district court's disqualification of a defense attorney for abuse of discretion. *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008). Arledge first selected Stephen Jones and Ryan Lurich to represent him. The district court disqualified Lurich because Lurich was simultaneously attempting to represent both Arledge, who essentially orchestrated this scheme, and two other defendants, who were lower level employees—and Arledge was paying Lurich to represent these two defendants. Accordingly, there were compelling reasons, including the potential for serious conflicts of interest, why the district court disqualified Lurich from representing Arledge, and it was certainly not an abuse of discretion for the district court to do so. *See id.* at 333-34.

V.

Finally, Arledge contends the district court erred in applying three separate enhancements to his base offense level: a six-level enhancement for knowingly laundering proceeds from the distribution of controlled substances, a four-level increase for being in the business of laundering money, and a four-level increase for being the organizer and leader of a criminal enterprise. Arledge's base offense level was 22 before these enhancements, and 36 after.

---

[4] *See, e.g.*, *United States v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005) (no reversible error, "given the district court's cautionary instruction to the jury to consider only the evidence and that the attorneys' arguments were not evidence"); *United States v. Bernard*, 299 F.3d 467, 488 (5th Cir. 2002) (no reversible error when "the court instructed the jury twice not to consider the statements, arguments or questions by the attorneys as evidence"); *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978) ("The trial judge in this case instructed the jury immediately after the prosecutor's statement that the attorneys' statements are not evidence to be considered by the jury. The defendant's rights were sufficiently protected.").

No. 11-41256

Arledge argues the enhancement regarding knowledge or belief that the proceeds derived from the distribution of controlled substances was erroneous because there was no evidence supporting it. However, there was significant evidence that Arledge knew his customers dealt drugs. Indeed, the district court referred to conversations in the record that Arledge had with two customers "which would clearly indicate that Mr. Arledge knew that one or more customers were in the business of drug-dealing."[5] Accordingly, the district court's finding that Arledge knew some of his customers were drug dealers was not clear error, and the enhancement on this basis was valid.

Next, Arledge argues that the evidence clearly indicates he was not in the business of money laundering. The Sentencing Guidelines direct courts to consider "the totality of the circumstances" in considering this enhancement, and they include a "non-exhaustive list of factors" to examine, including whether the defendant laundered funds regularly, for an extended period of time, or from multiple sources, and whether he generated a substantial amount of revenue from laundering funds. U.S.S.G. § 2S1.1(b)(2)(C) cmt. 4(A)-(B). In applying this enhancement to Arledge, the district court relied upon the facts that Arledge regularly laundered money from numerous customers over the course of two years, and that he made a substantial amount of money doing so—earning $638,000 on gross sales of $2.6 million. The district court's factual findings were not clearly erroneous, and its application of this enhancement was correct.

Arledge further contends that the enhancement based upon organizing or leading a criminal enterprise was inappropriate. This enhancement may be applied "[i]f the defendant was an organizer or leader of a criminal activity that

---

[5] For example, Arledge, in conversations with a customer named Marvin Keith, referred to a Bentley on his lot as "a drug dealer's car," and later, in reference to that same Bentley (which had now been modified), stated, "The drug dealer traded up." Moreover, additional evidence supports the district judge's conclusion, including that Kidd testified that he and Arledge discussed what would happen if Kidd's car were seized with drugs inside it.

No. 11-41256

involved five or more participants or was otherwise extensive[.]" U.S.S.G. 3B1.1(a). The Guidelines note that, "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of **one or more** other participants."[6] *Id.* at cmt. 2 (emphasis added). Given the numerous employee and criminal participants in this scheme, and Arledge's role as the orchestrator, the district court correctly applied a four-level enhancement to Arledge's sentence on this basis.

Finally, Arledge argues that his 188-month sentence is procedurally unreasonable, alleging that the district court failed to give any explanation or consideration of the § 3553(a) factors. This allegation, though, is simply not true. The district court announced the 188-235 month range Arledge faced, then allowed defense counsel to make his arguments as to why this range was inappropriate (further allowing the defendant to speak and witnesses to testify), before noting that other defendants received lower sentences based upon their substantial assistance to the government (§ 5K1 motions), or their plea agreements.[7] The district court then recognized that the government asked for a sentence at the high end of the sentencing range, while Arledge requested a downward departure. After further noting that Arledge had no criminal history, the court sentenced him at the low end of the applicable range.

## VI.

For the foregoing reasons, the defendants' convictions and the district court's judgments are

AFFIRMED.

---

[6] "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." U.S.S.G. § 3B1.1 cmt. 1.

[7] As the government notes, the sentencing hearing was very thorough and approximately two-and-one-half hours long.