# IN THE COURT OF APPEALS OF IOWA

No. 15-1162
Filed September 14, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GARY CORTEZ MARSHALL JR.,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Thomas G. Reidel,

Judge.


        Gary Cortez Marshall Jr. appeals the district court's denial of his request

to fire his privately retained counsel.  **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.



        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

We must decide whether the district court violated a defendant's right to private counsel.

## I.    Background Proceedings

Gary Cortez Marshall Jr. hired an attorney to represent him in a criminal matter.    Five months later, the attorney moved to withdraw, alleging "irreconcilable differences . . . which ha[d] caused the irretrievable breakdown of the attorney/client relationship."    Following a hearing, the district court denied the motion, and the case proceeded to trial.

On the second day of trial, Marshall withdrew his plea of not guilty and pled guilty to first-degree robbery, second-degree sexual abuse, second-degree kidnapping, and first-degree burglary.    He later filed what the district court construed as a motion in arrest of judgment claiming he "informed the [plea taking] judge that there wasn't any attorney client communication going on," and he was "forced to go to trial with a lawyer that didn't want to represent [him.]"    The court permitted counsel to withdraw and appointed the State Public Defender to represent Marshall.    At the sentencing hearing, Marshall withdrew his motion, and the district court imposed sentence.    Marshall appealed.

## II.    Analysis

Marshall contends the district court "denied [him] his constitutional right to retained counsel of his choice when it refused to allow [him] to fire" the law firm. In his view, the denial amounted to "a structural error that rendered his guilty plea invalid."

Because Marshall alleges a structural error, his withdrawal of the motion in arrest of judgment did not amount to a waiver of error, as the State claims. *See United Sates v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) ("We have little trouble concluding that erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."'" (citation omitted)); *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008) ("[E]ven in cases where a defendant has pled guilty, we must consider whether the district court erroneously denied a defendant the right to his counsel of choice, and waiver will not apply."). Accordingly, we proceed to the merits.

"The Sixth Amendment to the Federal Constitution requires that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *State v. Watson*, 620 N.W.2d 233, 235 (Iowa 2000). "[A]n element of [the Sixth Amendment right] is the right of a defendant who does not require appointed counsel to choose who will represent him." *State v. Smith*, 761 N.W.2d 63, 69 (Iowa 2009). But this right is circumscribed. *Id.* A district court may "disqualify counsel *if necessary* to preserve the integrity, fairness, and professionalism of trial court proceedings." *Id.* (*quoting State v. Vanover*, 559 N.W.2d 618, 626 (Iowa 1997)). "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). This court has endorsed the following test for the discharge of privately retained counsel: "[T]he defendant ha[s] the right to discharge his

counsel at will, unless a showing of significant prejudice to defendant, undue delay, or disruption of the orderly processes of justice [i]s made." *State v. Benson*, No. 04-1036, 2006 WL 1229992, at *8 (Iowa Ct. App. Apr. 26, 2006).

Our de novo review of this constitutional issue reveals the following facts. The law firm Marshall hired represented him for five months. The firm filed a motion to withdraw seven days before the scheduled trial date. At a hearing on the motion, Marshall's attorney stated he was "able to discuss things" with Marshall "in a very even level" for "the vast majority" of the time he represented him. However, he "recently" received instructions from Marshall that the firm was "fired" and Marshall did "not want to do business" with the firm anymore. According to counsel, Marshall threatened to file a disciplinary complaint against an associate at the firm. Given the "breakdown in the attorney-client relationship," counsel sought a postponement of trial, an order allowing the firm to withdraw, and the appointment of the public defender as substitute counsel.

Marshall agreed with the comments made by his attorney and confirmed his desire to fire the law firm. He stated he told the firm three weeks earlier that he wanted new counsel, he began "working on" getting a new lawyer, and his mother retained an attorney for him, who had yet to file an appearance. At the same time, he did not object to his attorney's request for appointment of the state public defender.

The State vehemently resisted counsel's motion to withdraw, citing the twenty-one trial subpoenas issued for the following week, the arrangements out-of-state family members of one of the victims had made to attend trial, the fact

that—just eight days earlier—the defense stated it was ready to proceed to trial, and the fact that one of the victims would be leaving the country soon.

The State established Marshall unduly delayed his right to discharge counsel. *See Benson*, 2006 WL 1229992, at *9 ("[D]efendant does not have to justify his discharge of privately-retained attorney. Instead, the burden is on the State in such instances to make a showing that defendant is attempting to cause undue delay or disruption by discharging privately-retained counsel."). After informing his attorney he was fired, Marshall allowed the firm to represent him at a hearing on two motions eight days before the withdrawal hearing. At that hearing, he voiced no dissatisfaction with counsel's services and, indeed, stood silent as his attorney agreed the upcoming trial date was "still solid to everybody." And, although he later claimed to have retained new counsel, the attorney had not filed an appearance at the time of the withdrawal hearing despite the scheduled trial date four days later.

The State also established that Marshall's delay in discharging counsel would disrupt "the orderly processes of justice." *See Benson*, 2006 WL 1229992, at *8. The United States Supreme Court has cautioned against "ignor[ing] the concerns of victims" "in the administration of criminal justice." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Those concerns were legion. According to the State, the woman who the State asserted was sexually abused and kidnapped "anticipate[d] a traumatic experience . . . at trial." People coming to support her lived as far away as Washington. She was also scheduled to leave the country soon.

In short, countervailing circumstances overrode Marshall's right to discharge his private attorney. Accordingly, we conclude the district court appropriately denied his retained attorney's motion to withdraw. *See State v. Dixon*, No. 12-1873, 2013 WL 6405781, at *6 (Iowa Ct. App. Dec. 5, 2013) (stating defendant "did not have the absolute right to seek new counsel as a means to disrupt the orderly process of the case or to delay the sentencing proceedings").

We affirm Marshall's judgment and sentences.

**AFFIRMED.**