[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10356

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEVIN BUI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:20-cr-00035-TKW-1

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Kevin Bui and his coconspirators—Larry Harrison, Philip Ly, and Phi Nguyen—had marijuana shipped from California to northern Florida. They then laundered the proceeds from selling the marijuana and sent the money back via money order to another coconspirator in California. Bui appeals the sufficiency of the evidence supporting his conviction for conspiring to commit money laundering and the denial of a minor role reduction at sentencing. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 10, 2019, the Florida Department of Law Enforcement opened up a suspicious FedEx package from California and found twenty-four pounds of marijuana inside. The investigation into the package's intended destination led law enforcement to focus on Bui and Harrison.

As part of the investigation, law enforcement officers tracked Harrison as he drove from northern Florida to Alabama. As they were following Harrison, the officers noticed Bui trailing at a distance, providing "countersurveillance." Bui drove behind Harrison, exited off the same ramp, and followed him into a gas station where both got out of their cars but "it was almost like they pretended not to know one another." Bui followed Harrison leaving the gas station and continued trailing him through two cul-de-

sacs before Bui then backed into a spot facing a house. Harrison then entered the house and picked up another FedEx package while Bui kept watch.

On another day, law enforcement officers again followed Harrison into Alabama, this time to a hotel. When Harrison briefly stopped in front of the hotel, the officers saw Bui "driving through parking lots, driving slowly, looking around." The officers discovered that the same address (an address in California) had sent other packages to that same Alabama hotel, and, when intercepted and searched, all the packages contained more marijuana.

Law enforcement officers traced the marijuana to a California man named Hoang Pham. Pham admitted that Nguyen, Bui's uncle, had directed him to mail "one to three boxes" of marijuana per week to various addresses in northern Florida and southern Alabama. FedEx records showed that Pham had mailed over one hundred seventy packages weighing over two thousand kilograms over a three-year period.

As part of the investigation, law enforcement officers saw Bui and Harrison buy money orders from three different stores on a milelong stretch using "large bundles of cash." The money orders were each under three thousand dollars—the amount over which federal law required the buyer to show identification. After Bui and Harrison bought the money orders, they delivered them to Nguyen's house.

The law enforcement officers saw Bui buy more money orders a few weeks later, then followed him as he entered Nguyen's house with a yellow envelope for one or two minutes, and left. Ly arrived fifteen minutes later with a second envelope. When Nguyen tried to drive away, law enforcement stopped him and found tens of thousands of dollars' worth of money orders in his vehicle.

Telephone records showed that Bui had corresponded with his coconspirators—Harrison, Nguyen and Ly—more than two thousand times during a fourteen month period. For example, Nguyen texted Bui to "come over, do some MO [money orders]" because "you working for me today – tomorrow. . . . I need a bunch."

Pham testified that, at first, Nguyen would fly the money from the marijuana sales to California. But after he was caught at the airport with cash, he began sending money orders. Pham testified that Nguyen used nail salons to launder the drug proceeds before sending them to California. He also said that he and Nguyen would gamble with the "drug money" that Nguyen sent him.

The government charged Bui, Nguyen, Harrison, and Ly with conspiring to distribute marijuana and conspiring to launder the proceeds. Bui pleaded not guilty and went to trial.

At the close of the government's case, Bui moved for a judgment of acquittal on both counts. He argued that the evidence was insufficient to support a conviction for conspiracy to commit money laundering because "there's no indication of the source of

the funds. There's no indication that [he] knew where it was going, except to family or friends." The district court denied the judgment of acquittal motion and the jury found Bui guilty on both counts.

At sentencing, Bui did not object to the part of the presentence investigation report finding that he was responsible for forty percent of the total amount of marijuana distributed by the conspiracy—927 kilograms. But he did object to two parts of the presentence investigation report: (1) a specific conduct enhancement for money laundering under section 2S1.1(b)(2)(B) of the sentencing guidelines; and (2) the failure to reduce his sentence for the minor role he had played in the conspiracy, under section 3B1.2(b).

As to the role reduction, Bui argued that he was at the bottom of the marijuana distribution and money laundering operation—Pham and Nguyen were at the top, Harrison and Ly were in the middle, and that he had only been minimally involved. Bui argued that he had no idea how the marijuana was grown, packaged, or shipped, and that he had neither planned nor organized the conspiracy. All he had done, he contended, was take a few hundred dollars to help his uncle.

The district court overruled Bui's objections. As to the minor role reduction, the district court was "most persuaded" by the fact that Bui participated in every aspect of the conspiracy and understood its scope and the structure. The district court acknowledged that Bui "did not participate in planning or organizing," which "cut in his favor," and did not "exercise decision[]making

authority about necessarily where to go and when to be there . . . so that cuts a little bit in his favor." But the district court found that Bui "stood to benefit both financially and through the marijuana he got through the process from this activity."

With the money laundering enhancement and no minor role reduction, the district court calculated Bui's guideline range at ninety-seven to one hundred twenty-one months and varied downwards to sentence Bui to seventy-eight months' imprisonment. Bui appeals his conviction and sentence.

## STANDARD OF REVIEW

We review the sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998). And we review a district court's denial of a role reduction for clear error. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted).

## DISCUSSION

Bui makes two arguments on appeal. First, he argues that there was insufficient evidence to support his conviction for conspiracy to commit money laundering. Second, he contends that

the district court erred in denying him a minor role reduction at sentencing.

## Sufficiency of the Evidence

Bui argues that there was insufficient evidence to support his money laundering conspiracy conviction because the government didn't prove that the money he used to buy the money orders was the proceeds of drug transactions. We disagree.

In reviewing the sufficiency of the evidence, "[t]he relevant question" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Trujillo*, 146 F.3d at 845. To prove conspiracy to commit money laundering, the government had to show "(1) [an] agreement between two or more persons to commit a money-laundering offense; and (2) knowing and voluntary participation in that agreement by the defendant." *United States v. Broughton*, 689 F.3d 1260, 1280 (11th Cir. 2012).

The government charged that the conspiracy committed a money laundering offense under 18 U.S.C. section 1956(a)(1). Under section 1956(a)(1), the government had to show that "the property involved was in fact the proceeds of the specified unlawful activity." *United States v. Calderon*, 169 F.3d 718, 721 (11th Cir. 1999). The defendant need only know that the proceeds are "from some form of illegal activity"—not necessarily the specific illegal

activity. *See United States v. Majors*, 196 F.3d 1206, 1212 (11th Cir. 1999).

Bui argues that paying for drugs—even if the transactions were concealed—doesn't make the money "proceeds" of unlawful activity. But, viewing the evidence in the light most favorable to the verdict, a jury could have reasonably inferred that the money Bui used to buy money orders was the proceeds from drug sales.

Pham testified that Bui, Harrison, and Ly received drugs from California. The FedEx records showed that Pham mailed over one hundred seventy packages weighing thousands of pounds, some of which Bui and Harrison picked up in tandem. Law enforcement officers observed Bui provide "countersurveillance" at the addresses where the packages of drugs were sent. Pham also testified that Bui, Harrison, and Ly structured their purchases of money orders in amounts designed to avoid scrutiny, and, then Nguyen sent the money orders back to Pham. Pham testified that the money he received in the money orders was "drug money" that was laundered through casinos and nail salons before being converted into money orders. Finally, Nguyen texted Bui to ask if he would work for him because he needed "a bunch" of money orders. Given the evidence, the jury could have reasonably inferred from the circumstances that the money Bui used to buy thousands of dollars of money orders was the proceeds of an unlawful specified activity. *See Frazier*, 605 F.3d at 1282 (holding that evidence to sustain a conviction may be circumstantial); *Majors*,

196 F.3d at 1212 (holding the defendant need only know that source of funds is illegal activity).

Bui's reliance on *United States v. Harris*, 666 F.3d 905 (5th Cir. 2012) is unpersuasive. There, the Fifth Circuit reversed a money laundering conviction because the evidence showed that "[one defendant] supplied [a second defendant] and others with drugs and [the second defendant] and others sent payments in various forms back to [the first defendant]." *Id.* at 910. The money wasn't the proceeds from prior drug sales, the Fifth Circuit explained, because it was only used to buy drugs. In other words, the money hadn't been laundered. *Id.*

Here, unlike in *Harris*, the money orders were not used to pay for drugs. Rather, as Pham testified, the money orders were the proceeds of *prior* drug sales that had been laundered through nail salons and casinos before being converted into money orders. Because a reasonable jury could have found that the money Bui used to buy the money orders had been laundered, we affirm his conviction.[1]

---

[1] Because Bui's sufficiency argument fails on the merits, we do not have to address the government's contention that Bui's argument is subject to plain error because he did not raise it below. And because we affirm Bui's conviction for conspiracy to commit money laundering, we also affirm his enhancement under section 2S1.1(b)(2)(B) which, both sides agree, turns on the validity of his money laundering conviction.

*Mitigating Role Reduction*

Bui also argues that the district court clearly erred by refusing to award a minor role reduction. We disagree.

Under the sentencing guidelines, a defendant's offense level may be decreased by two levels if he shows that he was a minor participant in the crime. U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2, cmt. n.5. Unless a defendant is "substantially less culpable than the average participant," he is ineligible for a mitigating role adjustment. U.S.S.G. § 3B1.2, cmt. n.3(A). "It is entirely possible for conspiracies to exist in which there are no minor participants or for which the least culpable participants, for whatever reason, were not indicted. In either case, the fact that a particular defendant may be least culpable among those who are actually named as defendants does not establish that he performed a minor role in the conspiracy." *United States v. Zaccardi*, 924 F.2d 201, 203 (11th Cir. 1991).

In determining whether a defendant is entitled to a role reduction, the district court must consider: (1) the defendant's role measured against the relevant conduct for which he has been held accountable at sentencing, and (2) his role as compared to other participants in that relevant conduct. *See United States v. Rodriguez*, 751 F.3d 1244, 1258 (11th Cir. 2014). And, because the application of section 3B1.2 "is based on the totality of the circumstances

and involves a determination that is heavily dependent upon the facts of the particular case," the court should consider:

> (i)    the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)   the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)   the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)    the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmt. n.3(C). "The court must consider all of these factors to the extent applicable, and it commits legal error in making a minor role decision based solely on one factor." *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019) (quotation marks omitted).

Bui makes three arguments as to why the district court clearly erred. First, he says that the district court wrongly found that he understood the scope and structure of the conspiracy

because there was no evidence that he knew that marijuana was being shipped, where it was coming from, and what was happening to the money orders. Second, he argues that the district court "ignored" one of the five enumerated factors by not considering his "responsibility and discretion" in the scheme—which is critical, he continues, because he had none. And third, he contends that he played a much less significant role than Nguyen, Harrison, and Ly.

None of these arguments are persuasive. First, the district court's conclusion that Bui understood the scope and nature of the conspiracy is supported by the evidence at trial. Bui was involved in every aspect of the conspiracy. He helped pick up the FedEx packages from California. He helped provide security for the delivery of the packages. He helped launder the proceeds by buying the money orders and structuring them so he did not create suspicion. And he helped deliver the money orders to his uncle for shipment to California.

Second, contrary to Bui's argument, the district court expressly considered Bui's decisionmaking in the scheme. The district court acknowledged that Bui "did not participate in planning or organizing," which "cut in his favor," and he did not "exercise decision[]making authority about necessarily where to go and when to be there, but – so that cuts a little bit in his favor." Still, the district court found that the balance of the factors weighed against a minor role reduction. This wasn't clear error. *See Valois*, 915 F.3d at 732 (holding that a district court "commits legal error in making a minor role decision based solely on one factor").

Third, even if Bui was less culpable than Nguyen, Harrison, and Ly, that alone would not entitle him to a minor role reduction. In this case, there were other participants in the marijuana distribution and money laundering conspiracy that the government chose not to indict. That Bui was the least culpable of those the government decided to prosecute doesn't entitle him to a reduction because there were other members of the conspiracy. *See Zaccardi*, 924 F.2d at 203 ("[T]he fact that a particular defendant may be least culpable among those who are actually named as defendants does not establish that he performed a minor role in the conspiracy."). Further, Bui doesn't contest that he helped distribute and launder money for more than 900 kilograms of marijuana. Given the "extremely large" amount of marijuana involved—a literal ton—the district court didn't clearly err in denying the reduction. *See id.* (denying minor role reduction for defendant convicted of helping to import eight hundred kilograms of cocaine).

**AFFIRMED.**